### PEOPLE ex rel. BULLOCK v. HAYES, Warden of City Prison.

(Supreme Court, Appellate Division, Second Department.　March 5, 1915.)

1. HABEAS CORPUS (§ 4*)—EXISTENCE OF OTHER REMEDY.

Ordinarily habeas corpus will not be granted where there is a remedy by appeal or writ of error; but where the facts before the court cannot be materially changed, qualified, or explained, the writ may be resorted to.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 4; Dec. Dig. § 4.*]

2. CRIMINAL LAW (§ 173*)—FORMER "JEOPARDY."

A person is in legal "jeopardy" when he is put upon trial before a court of competent jurisdiction upon indictment or information which is sufficient in form and substance to sustain a conviction and a jury has been charged with his deliverance; that is, impaneled and sworn.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 289; Dec. Dig. § 173.*

For other definitions, see Words and Phrases, First and Second Series, Jeopardy.]

3. CRIMINAL LAW (§ 185*)—FORMER JEOPARDY—DISCHARGE OF JURY—DISAGREEMENT.

Where the relator was tried under indictment for manslaughter and the jury disagreed, being discharged without his consent, though also without objection, and he was indicted on the same facts for murder, the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

second indictment is valid, and he may be tried on it, since where the court lacks jurisdiction, or the indictment is too defective to support a conviction, or the jury is discharged without a verdict, after disagreement continued during reasonable time for deliberation, there is no former jeopardy that may be pleaded in bar of a subsequent prosecution.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 344; Dec. Dig. § 185.*]

4. CRIMINAL LAW (§ 1004*)—APPEAL AND ERROR—APPEALS.

Appeals in criminal trials are matters of statutory favor rather than of absolute right.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1004.*]

Stapleton and Putnam, JJ., dissenting.

Appeal from Special Term, Kings County.

Habeas corpus by the People of the State of New York, on the relation of Charles Bullock, against John Hayes, Warden of the City Prison. From an order dismissing the writ, and remanding the relator to custody (150 N. Y. Supp. 24), he appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and PUTNAM, JJ.

Robert H. Elder, of New York City, for appellant.

Harry G. Anderson, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for respondent.

BURR, J. On April 23, 1914, the grand jury of Kings county indicted Charles Bullock for manslaughter in the first degree, in that, on April 13th of the same year, he shot with a pistol his wife, Gertrude Bullock, which act was not justifiable or excusable, and which act resulted in her death. To this indictment the plea was of not guilty. On July 12, 1914, the defendant named therein was placed on trial thereunder. After hearing all of the evidence, both for the people and for the defendant, the case was submitted to the jury. After some hours of deliberation, the jury reported that they were unable to agree. The trial court so found, and they were thereupon discharged. While the minutes of the trial fail to disclose affirmative consent upon defendant's part, it does not appear that he interposed any objection thereto. Thereafter, and on October 15, 1914, the grand jury found another indictment against him for the crime of murder in the first degree, in that, on April 13, 1914, the defendant therein named willfully, feloniously, and of malice aforethought shot and killed Gertrude Bullock with a revolver; said death occurring on April 15, 1914. Upon the refusal of defendant to plead to said indictment, a plea of not guilty was entered, and he was remanded to the custody of the warden of the city prison to await trial. The indictment for manslaughter was deemed to be superseded by the later indictment for murder, and on November 7, 1914, an order was entered setting the former indictment aside. On November 12, 1914, relator sued out a writ of habeas corpus; his contention being that he was put in jeopardy on the occasion of the first trial, and that he may not again be put in jeopardy for the same offense. Const. art. 1, § 6;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Const. U. S. Amend. art. 5. From an order dismissing the writ, and remanding relator to custody, he appeals.

We may assume that the act of homicide, out of which the criminal charge in the first indictment arose, was the same act upon which the second indictment was based. There can be no question that, if relator had not been placed upon trial upon the indictment for manslaughter, the superseding of that indictment by the subsequent indictment for murder in the first degree, and its dismissal thereafter, would have been beyond successful criticism. Code Cr. Proc. § 292a.

Two questions are now presented for our consideration: First, whether, within the common-law rule as expressed in the constitutional provisions heretofore referred to, if placed upon trial under the later indictment, the defendant named therein will be "twice put in jeopardy for the same offense"; and, second, whether proceeding by writ of habeas corpus is the proper method to present that question. The learned court at Special Term decided the first question in relator's favor, but dismissed the writ upon the second ground specified.

[1-3] Considering these questions in their inverse order, it is undoubtedly the fact that "ordinarily the writ will not be granted when there is a remedy by writ of error or appeal." Riggins v. United States, 199 U. S. 547, 26 Sup. Ct. 147, 50 L. Ed. 303. But where, as in the case at bar, the facts before the court cannot be materially changed, qualified, or explained, it has been held, in rare and exceptional cases, that the writ may be resorted to. People ex rel. Collins v. McLaughlin, 194 N. Y. 556, 86 N. E. 1119. There may be difficulty in presenting this question by any plea in bar expressly authorized by statute. Code Cr. Proc. § 332. Notwithstanding this, as the guaranty against twofold jeopardy rests upon constitutional provisions, it may be that any objection on the record which clearly raises that issue at the outset of the trial is sufficient as a plea in bar in the nature of a plea of autrefois convict. People v. McGrath, 202 N. Y. 445, 454, 96 N. E. 92.

Again, even though the question might be raised by a motion in arrest of judgment, this could be only after trial and conviction under the second indictment. People ex rel. Stabile v. Warden, 202 N. Y. 138, 152, 95 N. E. 729. But if, in the meantime, the accused is unlawfully restrained of his liberty, and the evidence upon this is undisputed, why should he not have resorted to this summary remedy? We deem it unnecessary to determine this question at the present time, for the reason that, in our opinion, bringing the defendant named therein to trial upon the second indictment will not be placing him in jeopardy a second time, within the inhibition of the constitutional provisions. The general rule is that:

"A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been impaneled and sworn." Cooley's Constitutional Limitations (7th Ed.) p. 467.

If this general rule were strictly and literally applied, in case of the disagreement of a jury, there could never be a second trial upon

the same indictment, even though only one of the jurors should vote for acquittal. Disagreement would be equivalent to an acquittal. There are, however, exceptions to the general rule:

> If "the court had no jurisdiction of the cause, or if the indictment was so far defective that no valid judgment could be rendered upon it, or if by any overruling necessity the jury are discharged without a verdict, which might happen from the sickness or death of the judge holding the court, or of a juror, *or the inability of the jury to agree upon a verdict after reasonable time for deliberation and effort,* * * * in any of these cases the accused may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection." Cooley's Constitutional Limitations (7th Ed.) pp. 468, 469.

See, also, Commonwealth v. Cody, 165 Mass. 133, 42 N. E. 575; Commonwealth v. Purchase, 2 Pick. (Mass.) 521, 13 Am. Dec. 452.

The basis for these exceptions, when they have been found to exist, has been variously stated. In some instances it has been placed upon the ground of waiver and consent, in analogy to the rule adopted that, where the judgment of conviction has been reversed for errors in the conduct of the trial, there is implied consent on the part of the accused that, if his appeal is sustained and a new trial granted, he will waive his constitutional guaranty and consent to be tried a second time. 1 Bishop's New Criminal Law, §§ 995, 996; People v. Palmer, 109 N. Y. 413, 416, 17 N. E. 213, 4 Am. St. Rep. 477; Gannon v. People, 127 Ill. 507, 522, 21 N. E. 525, 11 Am. St. Rep. 147.

[4] As appeals in criminal trials are matters of statutory favor rather than of absolute right, doubtless the Legislature might, by proper enactment, deny to one convicted any right of appeal unless he consented, in express terms, that if his appeal were successful he' would waive his constitutional guaranty and submit to the second trial, even though the effect of such legislation might be to say to him: "Be hung contrary to law, or consent to be put in jeopardy a second time." See 1 Bishop's New Criminal Law, § 1043. The ends of justice, however, and long years of acquiescence in such practice, may be said to have justified the conclusion of an implied waiver, in the case of appeal, with like effect as if expressed as a condition in the statute allowing appeals or appearing by express words in the appeal record.

In applying the rule of analogy to the present situation, however, there may be a practical difficulty in resting the right to place the accused upon trial a second time upon an implied consent. Suppose the defendant not only did not consent to the discharge of the jury, but in express words declined to do so, and asserted that if the jury were discharged he would stand upon his constitutional guaranty and plead former jeopardy. In the face of such a record, it would be somewhat difficult for the court to find an implied waiver and consent. Still another ground for the rule as to new trial in the case of the discharge of the jury has been the rule of absolute necessity to find such waiver and consent in order to make the administration of the law effective, or, as it has been otherwise expressed:

> "All general rules touching the administration of justice must be so understood as to be made consistent with the fundamental principles of justice." Stewart v. State, 15 Ohio St. 155; Watkins v. State, 60 Ga. 601.

Courts are not only reluctant to decide cases by main strength, but the adoption of any such rule would be to confer dangerous power upon those charged with the administration of justice. Still another, and perhaps the more satisfactory, ground for the exception to the general rule arises from the distinction that may exist between apparent and real jeopardy:

"A defendant is placed in apparent jeopardy when he is placed on trial before a competent court, and a jury impaneled and sworn. His jeopardy is real, unless it shall subsequently appear that a verdict could never have been rendered by reason of the death or illness of the judge or a juryman, *or that after due deliberation the jury could not agree*, or by reason of some other like overruling necessity which compels their discharge without the consent of the defendant. * * * And when a person has been placed in actual jeopardy, the jeopardy cannot be repeated without his consent, whatever statute may exist on the subject. * * * A person cannot be twice placed in jeopardy for the same offense; but, in the cases to which we have referred, the happening of the subsequent event which renders the discharge of the jury necessary shows that the defendant has never been in actual jeopardy." People v. Hunckeler, 48 Cal. 331.

Whatever the true ground of the exception to the general rule, we think that, in this state, it has been the law since the decision in People v. Goodwin, 18 Johns. (N. Y.) 187, 9 Am. Dec. 203, that placing a person on trial, where such trial terminates by the inability of the jury to reach a verdict, is not so placing the person in actual jeopardy as to prevent his subsequent trial on the same charge. In that case Chief Justice Spencer said:

"Much stress has been placed on the fact that the defendant was in jeopardy during the time the jury were deliberating. It is true that his situation was critical, and there was, as regards him, danger that the jury might agree on a verdict of guilty; but in a legal sense he was not in jeopardy, so that it would exonerate him from another trial. * * * A literal observance of the constitutional provision would extend to and embrace those cases where, by the visitation of God, one of the jurors should either die, or become utterly unable to proceed in the trial. It would extend, also, to a case where the defendant himself should be seized with a fit, and become incapable of attending to his defense; and it would extend to a case where the jury were necessarily discharged in consequence of the termination of the powers of the court."

It may be true that the defendant was so far in jeopardy, when the jury had been impaneled and sworn upon the former trial upon a valid indictment within the jurisdiction of the court, that pending the trial no affirmative act on the part of the state or its prosecuting officers could terminate it before the verdict of the jury is rendered. 1 Bishop's New Criminal Law, § 1058; Cooley's Constitutional Limitations (7th Ed.) 470. But for practical purposes it must be said that, in the absence of such interference, the failure of the jury to agree upon a verdict is in effect no trial, and the accused is in precisely the same position as he was before the jury were impaneled and sworn. See U. S. v. Perez, 9 Wheat. 579, 6 L. Ed. 165; Trono v. U. S., 199 U. S. 521, 533, 26 Sup. Ct. 121, 50 L. Ed. 292, 4 Ann. Cas. 773; People v. Hunckeler, supra; Morgan v. State, 3 Sneed (Tenn.) 475; Walton v. State, 3 Sneed (Tenn.) 687; Stewart v. State, supra; Hurt v. State, 25 Miss. 378, 59 Am. Dec. 225; State v. Woodruff, 2 Day

(Conn.), 504, 2 Am. Dec. 122; Commonwealth v. Roby, 12 Pick. (Mass.) 496, 502. In the latter case Chief Justice Shaw said:

"Although in a certain sense it may be said that the prisoner was put in jeopardy by the first trial, yet the event has shown that there was no legal trial, and therefore that he was in no such jeopardy or danger of conviction as the maxim regards."

If Commonwealth v. Fitzpatrick, 121 Penn. 109, 15 Atl. 466, 1 L. R. A. 457, 6 Am. St. Rep. 757, may be deemed an authority to the contrary, we deem it not to be in accord with the current authority in this and other jurisdictions, and must decline to follow the same. If it be true that, because of the disagreement of the jury upon the trial of the manslaughter indictment, defendant has never been put in legal jeopardy, then any course is open to the prosecuting officials, whether to retry him upon the same indictment or to supersede this by another indictment charging him with a graver crime, based upon the facts and the offense in the first indictment; for the only restriction upon their so doing is the constitutional inhibition above referred to.

We have not considered the effect of section 400 of the Code of Criminal Procedure, nor whether such legislation violates constitutional restrictions, for the reason that this case ·is not included within its provisions: It will be sufficient for'us to determine its validity when the question is squarely presented.

We think that the order appealed from should be affirmed.

JENKS, P. J., and THOMAS, J., concur.

STAPLETON, J. (dissenting.) The relator was indicted for manslaughter. He was put to his trial. He was exposed to the necessity of becoming a witness to relieve himself from that charge. The jury disagreed, and were discharged without his procurement, consent, or waiver. Thereafter he was indicted for the capital crime of murder, based on the same homicide. The court is about to hold that the relator may be tried on the indictment for murder. The learned writer of the prevailing opinion cites no authority to sustain the decision. All that the cases cited by him determine is that where a defendant is indicted for manslaughter, and held upon that indictment, he may, notwithstanding the discharge of the jury upon their declaration of their inability to agree, be retried on the same indictment. So far as I have been able to discover, the procedure adopted in the case at bar is an innovation.

I should be inclined to dissent on principle; but in this state we have a statute which, where it does not violate a constitutional protection, absolutely regulates criminal procedure. People v. Palmer, 109 N. Y. 413, 417, 17 N. E. 213, 4 Am. St. Rep. 477; People ex rel. Stabile v. Warden, etc., 202 N. Y. 148, 149, 95 N. E. 729. Sections 428, 429, and 430, Code of Criminal Procedure, provide when a jury is to be discharged before agreement, how the reasons therefor are to be recorded, and what is to be done thereafter. Section 430 reads:

"In all cases where a jury are discharged, or prevented from giving a verdict, by reason of an accident or other cause, except where the defendant is discharged from the indictment, during the progress of the trial, or after the cause is submitted to them, the cause may be again tried at the same or another term."

The cause which may be tried again means the action submitted to the first jury—the action instituted by the indictment for manslaughter. The language of the section is clear and explicit, and admits of no other meaning. This law is ignored in the opinion of the court. In my judgment, the first indictment survives, and the second indictment is a nullity, and therefore not a superseder. The writ of habeas corpus is the appropriate remedy. People ex rel. Stabile v. Warden, etc., supra, 202 N. Y. 152, 95 N. E. 729.

Doubtless the order setting aside the indictment for manslaughter may be vacated by the court which made it, and the relator put upon his trial for the offense therein alleged; but, as there is no warrant returned for holding the relator, he should be discharged.

The final order should be reversed.

PUTNAM, J., concurs.